STATE OF IOWA, Appellee, v. ROY HEALD, Appellant.

**BURGLARY:** Jury Question. Evidence bearing on the issue of bur-
glary reviewed, and held to present a jury question, especially in
view of the explanation proffered by defendant as to the circum-
stances under which he came into possession of property alleged
to have been the fruits of the burglary.

*Appeal from Greene District Court.*—E. G. ALBERT, Judge.

JUNE 21, 1922.

REHEARING DENIED SEPTEMBER 23, 1922.

Defendant was indicted for the crime of breaking and en-
tering the clothing store of Oblinger & Grubb, in the town of
Scranton, Greene County, Iowa, on the 26th day of July, 1920,
with intent to commit larceny. The jury returned a verdict of
guilty, and sentence was pronounced on the verdict. Defendant
appealed.—*Affirmed.*

*George J. Dugan* and *Parsons & Mills,* for appellant.

*Ben J. Gibson,* Attorney General, for appellee.

ARTHUR, J.—Several errors are assigned by appellant, but

they all center on the single proposition in this case of the sufficiency of the evidence to send the case to the jury.

It is undisputed that the clothing store of Oblinger & Grubb at Scranton, Iowa, was burglarized on the night of July 26, 1920, and several suits of clothes and some other merchandise taken. Defendant lived in Dallas County, Iowa, about 30 miles from Scranton. Subsequently, the defendant sold some clothing which the State claimed was a part of the clothing which was taken at the time of the burglary. Defendant had in his possession clothing which the State claimed was taken as a result of the larceny. In the trial of the case, defendant attempted to account for his possession of the clothing by showing that he had purchased the same from two men who came to his place in the early morning following the larceny.

Called by the State, W. M. Grubb, one of the proprietors of the Scranton clothing store, testified, in substance, that, when he went to the store on the morning of July 27, 1920, there were about 60 suits gone; that a majority of the suits were Hart, Schaffner & Marx suits, worth from $27.50 to $45, averaging about $35 a suit for the 60 suits; that there were two or three dozen silk shirts taken, of the value of approximately $60, and a few boxes of neckwear and some hose taken; that, of the suits taken, some of them were made by Backrock & Company, of Philadelphia. Several suits of men's clothes found in the possession of the defendant were produced in evidence, concerning which Grubb testified that he recognized them as suits in their stock of merchandise on the night of July 26th, and that they were not there the next morning, and that he recognized them as a part of their stock. The witness testified as to the clothing produced as exhibits in evidence,—for example, without quoting all of his evidence:

"Exhibit A is one of the coats that was in the store. Exhibit D is a coat that was part of the merchandise of the store that I looked up that night. Exhibit F is the trousers that goes with Exhibits D and E. Exhibits D, E, and F were in the store on the night of July 26th. Exhibit I consists of a suit of clothes,—coat, trousers, and vest. I recognized it as one of the suits in our stock of merchandise on the night of July 26th, and it was not there the next morning."

On cross-examination, the witness said:

"Hart, Schaffner & Marx is a manufacturing company in Chicago. There is hardly a town of any size but what has a Hart, Schaffner & Marx dealer in it."

This question was asked:

"Q. So, if it were a question between you and some other dealer in Des Moines where a pack of these coats had been laid out, and there were two suits lying there exactly alike, with the same marks on them, you could tell which was yours, could you? A. No; but as it happened, the robber had these suits, and there were so many suits gone, it would naturally lead me to believe that they were my suits. Q. Now, all I am trying to get at is that these are your suits for the reason that you lost suits of exactly the same mark, the same material, and the same style there, on the night of the 26th of July, 1920? A. Yes, sir. Q. But in the event that some dealer in Des Moines or Sioux City or Fort Dodge had lost the same kind of suits exactly as to size, style, and mark, and they were all dumped into a pile on a table, you could not go and pick out your suits from the other suits? A. No, not in that case I couldn't."

F. M. Goodyear, the only clerk in the store, testified as to clothing produced as exhibits in evidence: "I recognize them as part of the stock, to the best of my knowledge." On cross-examination, the witness testified:

"Q. If this suit was lying here in a pile with a dozen suits of the same pattern and size, you could not tell whether it was a suit that was in the store that night or not, could you? A. Only that it was one like we had."

D. L. Hanson, sheriff of Boone County, who made search of the Heald premises, together with some other parties, and had talked with defendant, testified that Heald said that he had sold three suits to a Boone man and four to some other man at Jamaica, and that he had some two or three suits of clothes himself; that he sold the suits at $20 apiece; that he did not know the name of the man he bought them from; that he bought the suits some time in the night or early in the morning, and paid $12 apiece for them.

L. J. Holland testified that, in the latter part of July, 1920, he went with Clint Wilcox out to Heald's farm, four or five

miles south of Perry, about four or five o'clock in the morning, and bought three suits of clothes from Heald, and paid him $20 a suit; that the suits were in the barn and house both; and that, on the same day, he went back to Heald's place with Mahlon Heater, and saw Heater buy four or five suits from Heald, at $20 a suit. The witness recognized at least one of the suits produced as an exhibit on the trial, as one that. he purchased from Heald.

James B. Reed, chief of police of Boone, who accompanied Sheriff Hanson to the Heald place, testified:.

"I heard him [Heald] talking to Hanson, and heard him tell Hanson that he had sold three suits to Mr. Holland and four suits to Mahlon Heater; that he had sold twelve suits altogether."

J. R. Quinlan, sheriff of Greene County, who was with Sheriff Hanson of Boone County and James B. Reed and others at the Heald home in December, when the search of the premises was made, testified:

"Heald said   he had purchased twelve or more suits of clothes of two men who were driving to Des Moines at four or five o'clock in the morning; said that he purchased the suits at $12 apiece; said he sold three suits to Holland, of Boone, four of them to one of the Heater boys, of Jamaica, and that he could not remember who he had sold the balance to; said he did not remember whether he paid cash or gave a check. He said he paid $12 apiece for the suits, and that he bought them early in the morning, about five o'clock."

Called by defendant, Martha Heald, a lady 76 years old, mother of defendant, testified:

"I remember of my son having some clothing one time last summer. I don't know where my son got that clothing; he bought some of some men. I never saw them, but he bought some. A man at Scranton said they were stolen in June. There was never any clothing of that character around here. I don't know anything about my son having some dealings with some parties along about the latter part of July, but he bought some of some strange men that came along. They just drove along the road and stopped at the gate east of the house, five to six to seven o'clock. He came in to get some money to buy some suits

of clothes.   He was at home the night before; never was away, but the time they took him over to Jefferson.''

On cross-examination, she testified:

''Q.  Do you remember whether it was spring, summer, or winter?   A.   Yes; it was towards fall.   I don't know hardly anything about it; I am not sure.   If I hear anything, I am awful forgetful.   I saw men in the car.   I didn't notice them very much.   One got out of the car, and as soon as Roy got these clothes, they went south.   Two or three suits is the best I can tell.   He hung them in the barn.   I didn't see them.   I am sure Roy was never away from home after nine o'clock at night during the months of June and July.''

In his own behalf, defendant testified that he was a single man, 37 years old, and that his mother was 76 years old; that he lived with his mother on·a 20-acre farm, rather rough, 5 acres of which was farming ground, and the rest pasture; that he was not in Scranton during the day or night of July 26, 1920; that, on the .morning of the 27th of July, between 6 and 7 o'clock, he purchased 10 or 12 suits of clothes, at $12 per suit, from two men who came along in an old Ford car; that he had seen the men some two years before; that he put the suits in thé haymow, after he bought them; that he sold three of the suits to L. J. Holland for $20 per suit, and four or five suits to Mahlon Heater at $20 per suit; that he sold other suits, but did not recall to whom he sold them; that he got $20 a suit for all the suits he sold.   When shown one of the suits bought by Holland, he said: ''Couldn't swear whether that was one of the suits I sold Holland or not.''

Mrs. Hattie Hennessey, a sister of defendant's, testified that she recalled the circumstances of Roy's purchasing some clothing; that she saw Roy go to bed about 9 o'clock, the night of July 26th, and when she got up in the morning, about 5 o'clock, Roy was at home, and she noticed that his bed had been occupied; that she remembered that some men stopped at the place; the morning of the 27th, driving a Ford car; that she saw Roy go out to the car, and that he came to the house and got some money, remarking that he had got a bargain ·in some clothing; that she did not see the clothing after it was purchased.

At the close of the State's evidence, defendant moved the court to direct a verdict for defendant, and renewed the motion at the close of all the testimony; and the errors assigned and relied upon by defendant are predicated upon the overruling of said motions, the claim of the defendant being that the trial court erred in not sustaining said motions for a directed verdict, because the evidence was insufficient to support the verdict. The error assigned in not sustaining the motion for a new trial is based on the same ground. Counsel for appellant, in argument of this proposition, urges that the evidence for the State was entirely circumstantial in character, and was not sufficient to support a verdict of guilty, and bases his argument on the theory that there was not sufficient identification of the goods as the property that was taken as a result of the breaking and entering of the store building of Oblinger & Grubb.

We have set forth the testimony quite fully, that the question of identification may be considered. As will be observed, the witnesses for the State were positive in their identification of the goods, in their examination in chief. The State's witnesses testified that they recognized the clothing as clothing taken as a result of the larceny. It is true that, on cross-examination, the State's witnesses admitted that, if suits taken from Oblinger & Grubb's store and several other stores, all being the same kind of suits as to size, style, and mark, made from the same piece of goods by the same manufacturer, were dumped into a pile on a table, they would not be able to pick out the suits taken from the Oblinger & Grubb store. But we think the contention of counsel for defendant that the conviction was based on inference drawn from inference, and that the identification was insufficient to take the case to the jury, is without merit. In addition to the testimony of Grubb, the proprietor, and Goodyear, the clerk, there were presented to the jury a situation and circumstances which involved more than the mere finding of the goods in defendant's possession. The explanation made by defendant would probably have as strong a tendency to induce a jury to convict as the possession of the goods by him. The fact that defendant admitted the purchase of some twelve suits of clothing from men unknown to him, and the further fact that he placed this clothing in a barn, are strong circum-

stances, which may readily be seen to have had an influence on the jury. Jurors are well aware that farmers are not in the business of buying and selling clothing, and are not likely to purchase a dozen suits of clothes, worth from $25 to $50 a suit, and hang them away in a barn, pending the appearance of prospective purchasers. All these circumstances the jury might properly take into consideration, in determining whether or not the defendant was guilty of the larceny of the property. The jury might well conclude, we think, that defendant's explanation of his possession of the property was not satisfactory. Whether the articles of clothing found in the possession of defendant and produced at the trial were the identical articles of clothing taken from the store of Oblinger & Grubb was a question for the jury.

On review of the whole testimony, we have no doubt of the sufficiency of the evidence to warrant the submission of the case to the jury. There was no error in overruling the motions to direct verdict, nor in the denial of a new trial. The judgment of the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.